RECEIVED
AUG 23 2017
AT 8:30_____ M
WILLIAM T. WALSH
CLERK

**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

TRICIA PERRY,

    Plaintiff,

v.

CAPTAIN CHRISTENSEN, et al.,

    Defendants.

Civil Action No. 16-4822 (MAS) (TJB)

**MEMORANDUM OPINION**

This matter has come before the Court on a civil rights Complaint filed by Plaintiff Tricia Perry, as administratrix for the estate of Nathan Perry, pursuant to 42 U.S.C. § 1983. Plaintiff's claims arose out of a tragic incident on June 15, 2014, when Nathan committed suicide while in Defendants' custody at the Middlesex County Adult Corrections Center ("MCACC"), three days after his arrest and placement there.[1] (Compl. 6-7, ECF No. 1-1.) The Complaint alleges that after his arrest, Nathan's family contacted various officials at the prison, the prison medical unit, and the Middlesex County Sheriff's Department to inform them that Nathan was a suicide risk, but was ignored. (*Id.*) Presently before the Court is a motion to dismiss by Defendant CHG Healthcare Systems ("CHG") (ECF No. 22) and a motion to amend by Plaintiff (ECF No. 21).

The original Complaint was filed in state court on June 10, 2016. It asserted claims against the prison, the warden, the sheriff's department, and various individual officers from the prison

---

[1] The Complaint actually states that the suicide occurred on June 15, 2016, while all other dates alleged in the Complaint occurred in 2014. The Court construes the June 15, 2016 date as a typographical error, since the Complaint itself was filed on June 10, 2016. Indeed, in Plaintiff's proposed Second Amended Complaint, *see infra*, the date has been corrected to June 15, 2014. (Proposed Second Am. Compl., ECF No. 21-2 at 8.)

and the sheriff's department, as well as claims against john doe defendants. The case was then removed to this Court, and Magistrate Judge Tonianne J. Bongiovanni held the initial pretrial conference on October 17, 2016. Thereafter, with the consent of the original defendants, Judge Bongiovanni granted Plaintiff leave to file an amended complaint to add additional parties. (Order, Nov. 2, 2016, ECF No. 12.) Plaintiff filed his first Amended Complaint on November 9, 2016, specifically adding CHG as a defendant, who was the contractor providing medical services at MCACC. (*See* First. Am. Comp. 1, ECF No. 13.)

### A. Motion to Dismiss

In the instant motion to dismiss, CHG asserts that the claims against it are time-barred. Under New Jersey law, an action for an injury caused by a wrongful act, neglect, or default must be commenced within two years of accrual of the cause of action. N.J.S.A. § 2A:14-2; *Estate of Lagano v. Bergen Cty. Prosecutor's Office*, 769 F.3d 850, 859 (3d Cir. 2014). Federal courts look to state law to determine the limitations period for § 1983 actions. *Wallace v. Kato*, 549 U.S. 384, 387-88 (2007); *Lagano*, 769 F.3d at 859. Civil rights or constitutional tort claims are best characterized as personal injury actions and are governed by the applicable state's statute of limitations for personal injury actions. *Lagano*, 769 F.3d at 859. Accordingly, New Jersey's two-year limitations period on personal injury actions governs Plaintiff's claims. *Id.*

As summarized above, Plaintiff's original Complaint was filed five days before the statute of limitations on *all* of Plaintiff's claims expired. Plaintiff's claims against CHG, asserted for the first time in Plaintiff's November 9, 2016 First Amended Complaint, therefore, were technically raised beyond the statute of limitations period. As such, Plaintiff's claims against CHG can only be timely if they "relate back" to the date of the original pleading under the "relation back" provision of the Federal Rule of Civil Procedure 15(c).

Rule 15(c) permits an amendment to relate back to the date of the original pleading when:

> (A) the law that provides the applicable statute of limitations allows relation back; or (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment [satisfies the provisions of 15(c)(1)(C)(i)&(ii)].

Fed. R. Civ. P. 15(c). When "[r]eplacing the name John Doe with a party's real name," as is the case here, it "amounts to the changing of a party or the naming of a party under Rule 15(c)[.]" *Garvin v. City of Phila.*, 354 F.3d 215, 220 (3d Cir. 2003). Under Rule 15(c)(1)(C), an amendment may relate back only if "within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by an amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ P. 15(c)(1)(C); *Krupski v. Costa Crociere S. p.A.*, 560 U.S. 538, 541 (2010). In *Krupski*, the Supreme Court held that the only relevant inquiry, in deciding whether an amendment to change a party can benefit from the relating-back provision, is whether "the party to be added knew or should have known, not on the amending party's knowledge or its timeliness in seeking to amend the pleading." *Id.*

Because knowledge of actual notice is difficult to obtain by a plaintiff, the Third Circuit has allowed district courts to impute notice under two possible methods:

> The first is the "shared attorney" method, which is based on the notion that when the originally named party and the parties sought to be added are represented by the same attorney, "the attorney is likely to have communicated to the latter party that he may very well be joined in the action." The second is the "identity of interest" method, and is related to the shared attorney method. "Identity of

3

> interest generally means that the parties are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other."

*Garvin*, 354 F.3d at 222-23 (quoting *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 196-97 (3d Cir. 2001)); *see also Schiavone v. Fortune*, 477 U.S. 21, 29 (1986) ("Timely filing of a complaint, and notice within the limitations period to the party named in the complaint, permit imputation of notice to a subsequently named and sufficiently related party.").

Under the facts of this case, the Court imputes notice to CHG. To begin, Plaintiff specifically mentions the prison medical unit—in essence, CHG—in the original Complaint, and explicitly asserts that defendants "failed to properly evaluate decedent for psychological problems," a medical issue. (Compl. 8.) By suing the prison defendants for actions that were ultimately carried out by a contractor the prison hired to provide medical services, at least one court in this circuit has, in similar circumstances, imputed notice to the contractor. *See Win & Son, Inc. v. City of Phila.*, 178 F. Supp. 3d 234, 247 (E.D. Pa. 2016) (relying on the "identity of interest" doctrine to impute notice to a subcontractor who performed the services that led to the plaintiff's claims against the prime contractor). The *Win* court reasoned that because the prime contractor often contracted with the subcontractor to perform the services in question, had frequent communications with the subcontractor regarding its services, and shared equipment and storage space with the subcontractor, the prime contractor was likely to have notified the subcontractor about a lawsuit against the prime contractor for the services that were actually performed by the subcontractor. *Id.*

Here, CHG obviously shared the same building as the prison, so frequent communication was not only expected, but probably required, as CHG was likely under the supervision of the warden, who is a party to this lawsuit. In their initial answer, the prison defendants raised a defense

that "[t]he incident which forms the basis of this litigation and which allegedly caused the injuries and damages to plaintiff was proximately caused or contributed to by the fault of third parties, not parties to this suit," (*see* Ans. to Compl. 5, ECF No. 8), suggesting that as early as the service of the original Complaint, defendants intended to seek contribution or indemnification from CHG. This was confirmed when, in their answer to the First Amended Complaint once CHG was named as a defendant, the prison defendants in fact raised a cross claim for contribution against CHG. (*See* Ans. to Am. Compl. 7, ECF No. 16.) Indeed, the prison defendants consented to the amendment in the first place. It is implausible that the prison defendants kept CHG in the dark about this lawsuit for months, and waited until the filing of the First Amended Complaint before notifying, or relied on Plaintiff to notify, CHG of the lawsuit.

Most tellingly, nowhere in its motion, the supporting brief, or the attached exhibits does CHG assert that it was unaware of the lawsuit until served by Plaintiff. CHG makes a half-hearted attempt at arguing prejudice,[2] even though discovery has not even begun in this matter, but makes no assertion whatsoever about, as the Supreme Court held, the only relevant inquiry concerning Rule 15(c)(1)(C): notice. "Since [defendant] does not even argue that he was not aware of [plainitff's] initial Complaint within [the Rule 4(m) period], . . . this Court cannot find at this juncture that the claims against [defendant] do not relate back under Rule 15(c)(1)(C) as a matter of law." *Dalal v. N. Jersey Media Grp., Inc.*, 2014 WL 2691698, at *4 (D.N.J. June 13, 2014). Accordingly, for purposes of the present motion, the Court finds that the claims against CHG relate

---

[2] CHG argues that it may be prejudiced because as of November 30, 2016, or about two weeks *after* it was served, it was no longer a contractor of the prison, so it may have difficulty accessing Nathan Perry's medical records and personnel previously employed at the site. The Court fails to see why any alleged difficulty cannot be addressed through the discovery process, and certainly, no such difficulty existed when CHG was served or during the relevant Rule 4(m) period— Plaintiff cannot be faulted for difficulties that, for all intents and purposes, were not caused by Plaintiff's amendment.

5

back to the original filing date of the initial Complaint, and CHG's motion to dismiss on statute of limitations ground is denied.

**B.     Motion to Amend**

Having found that Plaintiff's claims against CHG in the First Amended Complaint were timely, the Court now addresses Plaintiff's motion to amend, which seeks to add a medical malpractice claim against CHG. Like Plaintiff's first amendment against CHG, the Court must analyze Plaintiff's second amendment under Rule 15(c) to see if Plaintiff's new claim relates back to the original filing date of the Complaint in order to overcome the statute of limitations bar.

This Court must "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "This liberal amendment philosophy limits the district court's discretion to deny leave to amend. The district court may deny leave to amend only if a plaintiff's delay in seeking amendment is undue, motivated by bad faith, or prejudicial to the opposing party." *J.E. Mamiye & Sons, Inc. v. Fidelity Bank*, 813 F.2d 610, 613 (3d Cir. 1987) (quoting *Adams v. Gould, Inc.*, 739 F.2d 858, 864 (3d Cir. 1984)).

Unlike the previous amendment to add a party, the instant motion to amend seeks to add a new claim against an existing party, which is governed by Rule 15(c)(1)(B). "[A]pplication of Rule 15(c)(1)(B) normally entails a search for a common core of operative facts in the two pleadings." *Glover v. F.D.I.C.*, 698 F.3d 139, 145 (3d Cir. 2012) (citation and quotation marks omitted). "[O]nly where the opposing party is given fair notice of the general fact situation and the legal theory upon which the amending party proceeds will relation back be allowed." *Id.*

Here, the proposed new pleading relies on substantially the same set of events and facts as the previous pleading, with only two additional factual allegations providing more details regarding the treatment Nathan Perry allegedly received before his suicide. (*Compare* First. Am.

6

Comp. 3-4, *with* Proposed Second Am. Compl., ECF No. 21-2 at 7-9.) As such, the proposed new claim clearly shares a common core of operative facts with Plaintiff's previous claims against CHG. This Court and other courts have routinely allowed amendments adding state law negligence claims to relate back under Rule 15(c) under similar circumstances. *See Gibbs v. Univ. Corr. Healthcare*, No. 14-7138 (MAS), 2016 WL 6595916, at *5 (D.N.J. Nov. 7, 2016); *Renee v. Wetzel*, No. 14-0145, 2016 WL 707486, at *9 (W.D. Pa. Feb. 22, 2016) (allowing amendment of medical negligence claim under Rule 15(c) to a § 1983 action alleging Eighth Amendment denial of medical services); *see also White v. City of Chicago*, No. 14-3720, 2016 WL 4270152, at *6 (N.D. Ill. Aug. 15, 2016) (allowing amendment of negligent supervision claim under Rule 15(c) to a § 1983 action asserting excessive force); *Mink v. Arizona*, No. 09-2582, 2010 WL 2594355, at *3 (D. Ariz. June 23, 2010) (holding that amendment adding negligence claim to § 1983 action not barred by statute of limitations because of Rule 15(c)).

As this Court has opined, "[i]n the context of a claim that the deprivation of medical care amounted to a constitutional violation, proof of such claim would almost certainly prove a case of ordinary state law malpractice[.]" *Baadhio v. Hofacker*, No. 15-2752 (MAS), 2015 WL 6445802, at *2 n.2 (D.N.J. Oct. 23, 2015) (quoting *Taylor v. Plousis*, 101 F. Supp. 2d 255, 263 n.4 (D.N.J. 2000)). It cannot be reasonably argued that CHG, a medical services provider, did not have fair notice of possible medical malpractice claims against it. Accordingly, the Court finds that Plaintiff's proposed state law medical malpractice claim relates back to the original Complaint under Rule 15(c) and is not time-barred. Furthermore, as stated above, there is little prejudice to CHG as this case is in the very early stages of litigation. *See S. Jersey Gas Co. v. Mueller Co. Ltd.*, 429 F. App'x 128, 131 (3d Cir. 2011) (finding that, even at the summary judgment stage, a request to amend is properly considered under Rule 15 "[s]ince amendment of a complaint is not

7

unusual at the summary judgment stage of the case" (quoting *Adams*, 739 F.2d at 869)). Accordingly, the motion to amend is granted.

s/ Michael A. Shipp<br>
**MICHAEL A. SHIPP**<br>
**UNITED STATES DISTRICT JUDGE**

Date: August 23, 2017